# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

In the Matter of the Search of:

INFORMATION ASSOCIATED WITH THE CELLULAR
TELEPHONE ASSIGNED CALL NUMBER (315)-664-9526,
WITH INTERNATIONAL MOBILE SUBSCRIBER
IDENTITY 310260933909810, THAT IS STORED AT
PREMISES CONTROLLED BY T-MOBILE

)
)
)
)
)
)

Case No. **19-M-164 (DEJ)**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
Title 21, United States Code Section 846

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Nathan Plennes, Task Force Officer
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: July 15, 2019

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin

Case 2:19-mj-00164-DEJ   Filed 10/09/19   Page 1 of 17   Document 1

David E. Jones, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Task Force Officer Nathan Plennes being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (315)-664-9526, with International Mobile Subscriber Identity 310260933909810 ("the SUBJECT PHONE"), that is stored at premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way Parsippany, NJ 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **T-Mobile** to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am employed as a Detective with the Waukesha County Sheriff's Department and have been a law enforcement officer for over ten years. I have been a Detective for five years and have been assigned to the High Intensity Drug Trafficking Area (HIDTA) for over two years. I was previously assigned to the Waukesha County Metropolitan Drug Enforcement Group as a Deputy Sheriff for 11 months. I am also a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration (DEA), and have been since August 2016. As such, I am an investigative or law enforcement officer of the United States within the

meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.     I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

a.     I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.     I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c.     I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d.     I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e.     I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.     I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g.     I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

2

h.   I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i.   I know that drug traffickers often use cellular telephones to communicate with their co-conspirators and customers;

j.   I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

k.   I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

4.   The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.   Based upon my training and experience, I know that a "controlled buy" is a term which refers to a situation in which a confidential informant works with law enforcement officers regarding the purchase of a controlled substance from person(s) at a known address or in a known vehicle; that law enforcement searches the person, clothing, and, if applicable, the vehicle of the informant to make sure that the informant has no controlled substances or monies on their person; that law enforcement gives the informant money and watches the informant walk into the known targeted residence or vehicle; that law enforcement watches the informant walk out of the known targeted residence or vehicle a short time later and return to law enforcement; that the informant gives law enforcement the controlled substance(s) which the informant has purchased inside the residence or vehicle and relates to law enforcement the circumstances of the purchase; and that law enforcement again searches the informant to make sure that the informant has no

3

controlled substances or monies on the informant's person or clothing or, if applicable, in the informant's vehicle.

6.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846, have been committed, are being committed, and will be committed by Ananda MUJICA.  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

7.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

8.     On October 7, 2018 members of the Waukesha County Sheriff's Department responded to a residence located at W241N2533 East Parkway Meadow Circle in the City of Pewaukee, located in Waukesha County, WI for a twenty one year old, pulseless non breathing female.  The female was located in her bedroom at the time members of the Waukesha County Sheriff's Department arrived.   Life saving measures were attempted but the female was ultimately declared deceased.   Detective Aaron Hoppe of the Waukesha County Sheriff's Department was assigned to investigate this suspicious death.  Detective Hoppe learned that the deceased had travelled to the city of Milwaukee to purchase heroin with two other individuals identified as Colin Kane and Alesha Block.

9.     Detective Hoppe conducted a post-*Miranda* warning with Colin Kane and his attorney at the Waukesha County Sheriff's Department.  During the interview the Kane stated

4

that he met the deceased at her place of employment at approximately 11 p.m. on October 6, 2018. Kane went onto state that he and the deceased met with another female identified as Alesha Block at the McDonald's in the area of W. Capitol Dr and W. Appleton Ave traveled to meet "TJ" to purchase heroin. Kane stated that Block had previously contacted a heroin dealer known to them as "TJ" to arrange the purchase of heroin. Kane stated that he has known "TJ" and purchased heroin from "TJ" for approximately one year but needed Block to purchase heroin because Kane owed "TJ" one hundred dollars for previous heroin transactions. Kane stated that he, the deceased and Block travelled to the area of N. 19th St and N. 20th St and W. Juneau Ave to purchase the heroin. Kane stated that when they arrived in the area he and the deceased exited the car and waited in the area for Block to return after she purchased the heroin from "TJ". Kane stated after Block met with "TJ", she picked up Kane and the deceased and they left the area. Kane stated they drove a short distance away and all three of them used some of the heroin Block had just purchased from "TJ". Kane stated after they used some of the heroin they drove back to the McDonalds where the deceased's vehicle was and the deceased and Kane to the deceased's residence and arrived at approximately 3 a.m. Kane stated he and the deceased exited the car and entered the residence and went into the deceased's bedroom.

10.     Kane stated once they entered the bedroom they used some more of the heroin before going to bed. Kane stated the deceased woke him up at approximately 7:30 a.m. on October 7th, 2018 and he and the deceased used more of the heroin they purchased and went back to bed. Kane stated that he woke up again at approximately 3:00 pm and noticed that the deceased was still sleeping. Kane stated that he was unable to wake her and over the next hour the deceased's breathing became more labored and at approximately 5 p.m. he realized that she was not alright, and he panicked and left the residence shortly after that.

5

11.     Kane admitted that the deceased had recently started using heroin approximately a month ago. Kane provided Detective Hoppe with "TJ's" phone number identified as (262)505-7273. Kane described "TJ" as black male of average size. Detective Hoppe provided this phone number to your Affiant, Task Force Officer Nathan Plennes.

12.     Case agents at the North Central HIDTA (High Intensity Drug Trafficking Area) developed a Confidential Source further referred to as CS 1 that was able to purchase heroin from "TJ". CS 1 identified "TJ" as Person #2. Case agents utilized CS 1 to conduct three controlled heroin transactions with Person #2. During the three controlled transactions CS 1 purchased .39 grams of suspected fentanyl on October 16, 2019, .89 grams of suspected fentanyl on October 31st, 2018 and .40 grams of suspected fentanyl on November 9th, 2019. Person #2 was subsequently arrested based upon the three controlled transactions and a search warrant that was executed at Person #2's residence.

13.     Case agents conducted a post-Miranda warning interview with Person #2 and Person #2 admitted that he was selling heroin and admitted to selling heroin on the days controlled transactions were conducted with CS 1. Person #2 advised that he has been purchasing his heroin from a Hispanic female and Hispanic male for the last several months. Person #2 stated that he met the Hispanic male at a bar on the south side of Milwaukee. Person #2 stated he did not know her name but she provided him with her phone number. Person #2 stated her phone number was (414)-509-4376. Person #2 stated the female told him that she had a boyfriend in the New York area that could supply him with heroin. Person #2 stated at first, he would contact the female at (414)-509-4376 to order heroin and the female would deliver it to him. Person #2 further stated that approximately two months ago the female stated that her boyfriend had moved from New York to Milwaukee. Person #2 stated after he was given this

6

information, he would contact the female to order heroin at (414)-509-4376 and the Hispanic male would deliver it to him. Person #2 stated that he never received a telephone number for the male, nor did he ever have direct contact with the male except when the male would deliver the heroin to him. Person #2 has a First Degree Reckless Homicide charge pending based upon the fatal overdose and is receiving consideration in return for this information and assistance.

14. Case agents determined that (414)-509-4376 was a telephone number owned by Sprint. Case agents submitted an administrative subpoena to Sprint and received the results on November 26, 2018. Sprint identified the subscriber information as Ananda Mujica with an address of PO Box 15955 Lenexa, KS 66285. Sprint indicated that this account was established on August 13, 2018. Case agents searched Wisconsin Department of Motor Vehicle records and located a female identified as Ananda Mujica with an address of 2608 W. Mitchell St, Milwaukee, WI. Case agents located a photograph of Mujica and provided this to the Person #2 and Person #2 identified a Mujica as the female he originally met that provided him with telephone number (414)-509-4376.

15. Case agents checked local law enforcement records systems and located several known associates of Mujica from previous investigations involving her. Case agents located a known male associate of Mujica identified as Ivan Nunez. Case agents provided Person #2 with a previous Milwaukee Police Department booking photograph of Nunez and Person #2 identified Nunez as the Hispanic male that has been delivering the suspected heroin to him after he has contact with Mujica.

16. Case agents at the North Central HIDTA developed a Confidential Source further referred to as Person #2 that was able to purchase heroin from Mujica and Nunez. Case agents have conducted nine controlled heroin transactions throughout this investigation with Person #2

7

and Nunez and Mujica. Case agents state during each of these controlled narcotics transactions Person #2 made text message contact with Mujica at (414)-509-4376 to arrange the suspected heroin transaction and Nunez delivered the suspected heroin and fentanyl during each transaction. Case agents conducted presumptive field tests on all the narcotics purchased during the controlled buys and determined that the "white" heroin consistently tested positive for fentanyl and the "tan' heroin tested positive for heroin.

17.     For example, on April 26, 2019 at 9:05 a.m. case agents met with Person #2 at a predetermined location. Case agents directed Person #2 to make contact with Mujica at (414)-509-4376 and request to purchase 10 grams of heroin. At 9:15 a.m. Person #2 began a text message conversation with Mujica. Person #2 sent a text message and stated, "U got 10?" Mujica responded, "Yes white", and sent an additional text stating "Are u ready". Person #2 replied, "Yea n yea". Mujica replied, "Ok". Person #2 asked, "How long u think tho". Mujica responded, "1 hr". Person #2 replied, "Ok cool I'm in the area". Case agents briefed the surveillance units were briefed on the time frame and surveillance responded to the area of 2608 W. Mitchell St to conduct physical surveillance of NUNEZ prior to the controlled heroin transaction. Case agents remained with Person #2.

18.     Case agents stated based upon a court ordered tracking warrant a gold 1998 Toyota Camry, 4-door, bearing Wisconsin license plate AEB-5988, VIN 4T1BG28K4WU842892 ("Vehicle #1") left the area of 2608 W. Mitchell St shortly after Mujica advised PERSON #2 that it would be one hour. Vehicle #1 travelled east on from the residence and drove directly to Mujica's place of employment located at 5150 International Drive in the City of Cudahy where a blue 2015 Kia Sorento, SUV, bearing Wisconsin license plate 449-XFH, VIN 5XYKT4A6XFG606970 ("Vehicle #2") was parked. Case agents observed "Vehicle #1"

8

drive in to the parking lot and park next to Vehicle #2. Case agents were unable to see what occurred when Vehicle #1 parked next to Vehicle #2. Vehicle #1 was parked next to the Vehicle #2 for approximately two minutes at which point Vehicle #1 left the parking lot and travelled directly back to 2608 W. Mitchell St. and parked at approximately 10:35 a.m.

19.    Case agents searched Person #2 and Person #2's vehicle for money, drugs and weapons and located none. Case agents provided PERSON #2 with $1,000.00 in prerecorded money as well as an audio and video recording device. At 10:21 a.m. Person #2 left the pre-determined location and responded to the 1100 block of N. 20th St. Case agents maintained visual observation of Person #2 at all times. Person #2 arrived in the area at approximately 10:26 a.m. and parked mid-block on the east side of the street.

20.    At approximately 10:42 a.m. the court ordered tracking device on Vehicle #1 indicated that the vehicle was traveling north on S. Layton Blvd. from W. Mitchell St. At approximately 10:44 a.m., Person #2 received an incoming text from M Mujica at (414)-509-4376 stating, "He be there in 5 minutes". Person #2 responded, "Ok". At approximately 10:51 a.m. case agents observed Vehicle #1 turning northbound onto N. 20th St from W. Highland Ave and parked directly behind Person #2's vehicle. Case agents observed Person #2 exit his/her vehicle and walk to the front passenger door of Vehicle #1 and enter the vehicle. Case agents identified that driver of Vehicle #1 as Nunez. Case agents observed Nunez travel north on N. 20th St and pull over and stop just south of W. Vliet St. Case agents observed Nunez pull away from the curb and make a U-turn and travel south on N. 20th St and stop across from Person #2's vehicle. Person #2 exited Vehicle #1 at approximately 10:53 a.m. and Person #2 walked back to his/her car. Nunez and Vehicle #1 travelled south on N. 20th St and turned west on W. Highland

9

Ave and left the area. Person #2 left the area and responded back to the pre-determined location. Case agents maintained visual observation of Person #2 at all times.

21. At approximately 10:58 a.m. Person #2 arrived at the predetermined location. Case agents met with Person #2 at a pre-determined location. Person #2 turned over to case agents a baggie containing suspected heroin. Case agents searched Person #2 and his/her car for drugs, money and weapons and did not locate any contraband. Person #2 told case agents that when Person #2 entered the Vehicle #1 the only other occupant was Nunez. Upon entering the Vehicle #1, Person #2 gave Nunez the $1,000.00 in prerecorded buy money and Nunez counted the pre-recorded buy money. Person #2 stated after NUNEZ counted the money he provided Person #2 a plastic baggie containing the suspected heroin.

22. The baggie of suspected heroin contained one baggie which contained a white powdery substance. Case agents subjected a sample of the suspected heroin to Nark II #11 Mecke's Modified reagent test and received a negative result for the presence of heroin. Case agents subjected a sample of the suspected heroin to the Nark II #33 Fentanyl reagent test and received a positive result for the presence of fentanyl with a weight of 11.95 grams.

23. Case agents reviewed telephone tolls associated with telephone number (414)-509-4376 and determined based on call analysis that Nunez utilizes telephone number (315)-664-9526. Case agents obtained a court ordered Digital Analyzer Device tracking order on Tuesday January 22, 2019 in reference to (315)-664-9526. The search warrant was authorized by the Honorable Milwaukee County Judge Janet C. Protasiewicz. Case agents tracked (315)-664-9526 and determined based on the location data that this phone was in the possession of Nunez. Case agents further determined based on toll analysis that Nunez's top callers are Mujica and a girlfriend he has in New York identified as Leidy Guante Santiago.

10

24.     Case agents determined that (315)-664-9526 is a telephone number owned by T-Mobile. The subscriber of the telephone number is listed as "IN PREPAID none CUSTOMER" and the address is listed as "none". The service start date for this phone began on August 14, 2018.

25.     Based on information from a court ordered pen register associated with Nunez's telephone number, (315)-664-9526, Nunez and Mujica continue to be in contact on a regular basis.

26.     Person #2 had an outstanding debt of $5,800 when Person #2 started providing information to law enforcement about MUJICA. Person #2 was known to be a user of heroin in the past. Case agents believe Person #2 is a credible person because Person #2 has been providing reliable information to DEA since November of 2018.

27.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is

11

typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

28.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

29.     Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## **AUTHORIZATION REQUEST**

30.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

31.     I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or

12

control. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (315)-664-9526, with International Mobile Subscriber Identity 310260933909810 ("the Account"), that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at 4 Sylvan Way Parsippany, NJ 07054.

## ATTACHMENT B

### Particular Things to be Seized

## I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period August 14, 2018 through April 26, 2019.

   a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

2

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

   i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses involving Ivan Nunez during the period August 14, 2018 through April 26, 2019, 2019.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3